UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

SIERRA CLUB,

    Plaintiff,

v.

CITY OF MENASHA, et al.,

    Defendants.

Case No. 1:09-cv-122

Hon. William C. Griesbach

## CONSENT DECREE

WHEREAS, Sierra Club ("Plaintiff") brought this action against the City of Menasha and Menasha Utilities ("Defendants"), pursuant to Section 304 of the Clean Air Act (the "Act"), 42 U.S.C. § 7604, for penalties and for declaratory and injunctive relief for certain alleged violations of the Act and its implementing regulations, which regulate air pollution emissions from the steam and electric generating plant located at 198 River Street, Menasha, Wisconsin ("River Street Plant"); and

WHEREAS, the Parties agree that settlement of this action is in the best interest of the Parties and the public, and that entry of this Consent Decree, without further litigation, is the most appropriate means of resolving the matter; and

WHEREAS, the Parties recognize that this Consent Decree has been negotiated in good faith and at arms' length and that this Consent Decree is fair, reasonable and consistent with the goals of the Clean Air Act; and

WHEREAS, the Defendants have submitted to the Wisconsin Department of Natural Resources a preliminary application for a Prevention of Significant Deterioration permit, which the Department of Natural Resources is in the process of reviewing, but which is not yet complete;

WHEREAS, on May 27, 2009, the Menasha Utilities Commission recommended that the Menasha Common Council authorize and direct the Menasha Steam Utility to voluntarily cease its operations of the steam plant facility;

WHEREAS, on September 8, 2009, the Menasha City Council adopted R-21-09, authorizing and directing the Menasha Steam Utility to voluntarily cease its operation of the steam plant facility effective October 9, 2009;

WHEREAS, the Menasha Steam Utility has voluntarily ceased its operation of the steam plant consistent with Menasha City Council resolution R-21-09;

WHEREAS, the Parties desire to settle all matters by Consent Decree and avoid the costs, delay and uncertainty of further litigation; and

WHEREAS, the Parties have consented to entry of this Consent Decree without trial of any issues;

WHEREAS, the Parties have agreed that Plaintiff will forego its right to seek penalties, except that it reserves the right to seek penalties in the future for failure to comply with this Consent Decree, due to the financial situation of the Defendants and in exchange for the consideration being provided by Defendants through this Consent Decree, which will provide significant environmental and energy benefits to the public; and

2

WHEREAS, the United States Environmental Protection Agency Administrator and the United States Attorney General have had an opportunity to review and comment on this Consent Decree, pursuant to 42 U.S.C. § 7604(c)(3), and have not intervened in this case to oppose this Consent Decree;

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED AND DECREED:

## JURISDICTION, VENUE AND APPLICABILITY

1. The Parties to this Consent Decree are Sierra Club, the City of Menasha, Wisconsin, and the Menasha Utilities.

2. This Court has jurisdiction over this action, the subject matter herein, and the Parties consenting hereto pursuant to 42 U.S.C. § 7604(a) and 28 U.S.C. § 1331. Venue is proper under 42 U.S.C. § 7604(c)(1) and 28 U.S.C. § 1391.

3. Upon entry by the Court, the provisions of this Consent Decree shall apply to and be binding upon the Parties and on the Parties' successors and assigns and upon all future owners and/or operators of the River Street Plant, subject to paragraph 6 herein.

4. The Parties consent to entry of this Consent Decree without further notice.

## DEFINITIONS

5. For purposes of this Consent Decree, the following definitions shall apply:

    (a) "Best available control technology" or "BACT" shall have the meaning set forth in Wis. Admin. Code § NR 405.02(7).

(b) "Boiler(s)" means boiler #3 and/or boiler #4 at the River Street Plant. This definition includes fuel feeding equipment for boilers #3 and #4, but does not include the auxiliary heating boiler.

(c) "Clean Air Act" means the federal Clean Air Act, 42 U.S.C. §§ 7401-7671, and its state and federal implementing regulations.

(d) "Continuous Emission Monitor" or "CEM" means a system for continuous data collection and reporting of emissions and which meets the specifications set forth in Wis. Admin. Code § NR 439.095(6).

(e) "Defendants" means the City of Menasha, Wisconsin, and all its departments, including the Menasha Utilities and the Steam Utility, their affiliates, departments, successors and assigns, and all future owners and/or operators of the River Street Plant and their affiliates, successors and assigns, subject to paragraph 6 herein.

(f) "DNR" means the Wisconsin Department of Natural Resources.

(g) "Force Majeure Event" is defined in Paragraph 15 herein.

(h) "Plaintiff" means the Sierra Club, a non-profit corporation incorporated under the laws of California, with its principal place of business in Wisconsin located at 122 West Washington Street, Madison, Dane County, Wisconsin.

(i) "PSD" or "Prevention of Significant Deterioration" means the program set forth in 42 U.S.C. §§ 7470 through 7479 and Wis. Admin. Code ch. NR 405.

(j) "River Street Plant" means the plant located at 198 River Street, Menasha, Winnebago County, Wisconsin, including but not limited to the Boilers, steam turbines, coal handling, and ash handling equipment located there.

## APPLICABILITY

6. Transfer of ownership or operation of the River Street Plant shall relieve the Defendants of their obligation to ensure that the terms of the Decree are implemented only if transfer of ownership or operation is accomplished pursuant to this paragraph. Defendants will be relieved of the obligations of this Decree upon termination, or once the parties stipulate and the Court enters an order substituting the transferee for the Defendant in this Consent Decree, making the transferee subject to all responsibilities of the Defendants in this Consent Decree. At least 15 calendar days prior to any such transfer, the Defendants shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written transfer agreement, to the Plaintiff in accordance with paragraph 32 of this Consent Decree. Plaintiff shall treat the prospective transfer, the written notice of prospective transfer and the proposed written transfer agreement as confidential, unless informed otherwise by Defendants in writing.

Transferring ownership or operation of the River Street Plant without complying with this paragraph will not relieve Defendants of responsibility under this Consent Decree.

7. Defendants shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Decree. The Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Decree.

8. In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions herein, unless such actions are excused in accordance with the Force Majeure Section of this Decree.

## INJUNCTIVE RELIEF REQUIREMENTS

9. No later than the signature date of this Consent Decree, Defendants shall cease operation of the Boilers and ensure that no combustion occurs within and no air emissions are created from combustion of coal, petroleum coke, or tire-derived fuels in the Boilers of the River Street Plant after that date, except for purposes of testing, decommissioning and maintenance of the Boilers, and except as provided in paragraph 10.

10. After the signature date of this Consent Decree, Defendants shall not resume operation of the Boilers unless and until Defendants have:

> (a) obtained a Prevention of Significant Deterioration ("PSD") Permit for the plant that satisfies all requirements of the State

Implementation Plan ("SIP") approved provisions of Wis. Admin. Code ch. NR 405, and that contains best available control technology limits for particulate matter, nitrogen oxides, sulfur dioxides, carbon monoxide, and sulfuric acid mist that are consistent with paragraphs 11 and 12; or accepted enforceable permit limits that render the River Street Plant a synthetic minor source for purposes of PSD consistent with paragraph 11 (c) in which case a PSD permit will not be required; and

    (b)    submitted an application, or a revision to any pending application, for an operating permit pursuant to 40 C.F.R. pt 70 which identifies PSD and best available control technology limits as applicable requirements for particulate matter, nitrogen oxides, sulfur dioxides, carbon monoxide, and sulfuric acid mist.

11.    If Defendants submit an application for a PSD permit pursuant to paragraph 10, Defendants' application shall include an analysis of BACT for the Boilers at the River Street Plant that, at a minimum, satisfies one of the following:

    (a)    The application proposes emission rates for particulate matter, particulate matter less than 10 microns (PM10), nitrogen oxides, sulfur dioxides, carbon monoxide, and sulfuric acid mist that are no less stringent than the maximum degree of pollution reduction achievable for the Boilers through the following technologies:

7

| Pollutant | BACT-level Control Technology |
|---|---|
| $SO_2$ | Flue Gas Desulferization ("FGD") |
| $NO_x$ | Selective Catalytic Reduction ("SCR") |
| PM | Baghouse equipped with membrane material, micro-fiber material, micro-fiber capped composite material or other filter material that has enhanced performance for collection of fine particulate as compared to conventional material |

The factors in NR 405.02(7)(2009) shall be considered in establishing emission rates associated with such technologies.

    (b)    or; the application proposes and Defendants obtain enforceable permit limits that:

        i.    prohibit more than 90% of the combined heat input into the Boilers to be supplied by any combination of coal, petroleum coke, metallurgical coke and/or tires (i.e., tire derived fuel), averaged over any 12-month period for the first twenty-four (24) months following recommencement of operation; and

        ii.    prohibit more than 80% of the combined heat input into the Boilers to be supplied by any combination of coal, petroleum coke, metallurgical coke and/or tires (i.e., tire derived fuel),

8

averaged over any 12-month period, to take effect twenty-four (24) months after recommencing operation; and

  iii. represent best available control technology emission limits consistent with applicable law for particulate matter, particulate matter less than 10 microns (PM10), nitrogen oxides, sulfur dioxides, carbon monoxide, and sulfuric acid mist;

(c) or; the application proposes and Defendants accept enforceable permit limits that:

  i. restrict emissions of particulate matter, PM10, nitrogen oxides, sulfur dioxides, carbon monoxide, and sulfuric acid mist to levels that avoid having historic emissions increases trigger PSD permitting requirements, including, by way of example, limiting such emissions and/or derating the Boilers(s) to levels below the "major stationary source" set forth in Wis. Admin. Code § NR 405.02(22) (2009), thereby rendering the River Street Facility a synthetic minor source for purposes of PSD permitting. ; and

  ii. Prohibits the use of any fuels other than natural gas, biomass, and/or the fuels listed in Appendix A.

In this case the Boilers would not be required to meet BACT limitations or otherwise obtain a PSD permit pursuant to this Consent Decree.

12. Any PSD permit issued for the River Street Plant prior to restarting the plant shall either:

    (a) Include BACT limits at least as stringent as the maximum degree of pollution reduction achievable through the technologies in paragraph 11(a); or

    (b) Contain a limit on fuel usage consistent with paragraph 11(b) and include BACT limits consistent with applicable law for particulate matter, PM10, nitrogen oxides, sulfur dioxides, carbon monoxide, and sulfuric acid mist; or

    (c) Contain enforceable limits that restrict emissions of particulate matter, PM10, nitrogen oxides, sulfur dioxides, carbon monoxide, and sulfuric acid mist as set forth in paragraph 11(c), including a prohibition on use of any fuels other than those listed in paragraph 11(c)(ii).

13. In the application filed pursuant to paragraph 10 herein, Defendants shall not claim a creditable reduction in air emissions for the pollutants listed in paragraph 10 herein for purposes of calculating the "net emissions increase" pursuant to the June 2007 version of Wis. Admin. Code § NR 405.02(24). If the June 2007 version of Wis. Admin. Code § NR 405.02(24) is modified, vacated, or not approved by the United

States Environmental Protection Agency into the Wisconsin State Implementation Plan, Defendants may not claim a creditable reduction in the application filed pursuant to paragraph 10 herein for purposes of calculating a "net emissions increase" for the pollutants listed in paragraph 10 herein under the PSD regulatory program in effect at the time of filing the application under paragraph 10 herein.

14. Within ninety (90) days after entry of this Consent Decree, Defendants shall apply to the Wisconsin DNR for a revision to its operating permit, or revise any pending operating permit application, to incorporate the requirements of paragraphs 9 through 13 of this Consent Decree into the operating permits for the River Street Plant issued pursuant to 40 C.F.R. pt. 70 and Wis. Admin. Code ch. NR 407. Defendants shall take all actions necessary to ensure that any operating permit issued by the Wisconsin DNR for the plant includes the requirements of paragraphs 9 through 13 of this Consent Decree as applicable and federally-enforceable operating permit conditions The refusal of DNR or EPA to amend the operating permits shall not constitute a violation of this Consent Decree, provided Defendants have otherwise complied with this paragraph, including taking all necessary actions to obtain amended operating permits. If the DNR or the EPA refuses to issue an amended operating permit, such refusal does not excuse Defendants from compliance with all other requirements of this Consent Decree.

<strong><u>FORCE MAJEURE</u></strong>

15. For purposes of this Consent Decree, a "Force Majeure Event" shall mean an event that has been or will be caused by circumstances beyond the control of Defendants or their contractors or agents, that delays compliance with any provision of

11

Case 1:09-cv-00122-WCG    Filed 02/15/11    Page 11 of 20    Document 22

this Consent Decree or otherwise causes a violation of any provision of this Consent Decree despite Defendants' efforts to fulfill the obligation. Efforts to fulfill the obligation include attempting to anticipate any potential Force Majeure Event and to address the effects of such event (i) as it is occurring and (ii) after it has occurred, such that the delay or violation is minimized.

16. In the event the Defendants claim a Force Majeure Event, they shall give notice to Plaintiff within a reasonable time. In the event that the parties disagree regarding a claim of Force Majeure, the parties shall attempt to resolve that dispute pursuant to paragraph 27 of this Consent Decree. In any such dispute, Defendants shall have the burdens of proof and persuasion to demonstrate that a Force Majeure Event occurred, based on the standards set forth above.

17. Subject to the provisions of paragraphs 15 and 16 above, if a delay or violation is caused by a Force Majeure Event, such delay or violation shall not be considered a violation of this Consent Decree.

## **REPORTING REQUIREMENTS**

18. Defendants shall submit to Plaintiff a report on the closing down of the River Street Plant within thirty (30) days of entry of this Consent Decree. Until termination of this Consent Decree, Defendants shall provide Plaintiff with a copy of each air pollution related report required to be submitted to the Wisconsin Department of Natural Resources and/or United State Environmental Protection Agency within fifteen (15) days of filing such report with the agency.

19. If the Defendants violate any requirement of this Consent Decree, or have knowledge that a violation is imminent and unavoidable, Defendants shall notify Plaintiff of such violation and its likely duration in writing within ten (10) working days of the day that Defendants first become aware of the violation or imminent violation, with an explanation of the violation's likely cause and of the remedial steps taken and/or to be take, to prevent or minimize such violation.

20. Each notification, report and certification required of Defendants in this Consent Decree shall be signed by one or more officials of the Defendants, under oath, and containing the following statement:

> I certify under penalty of perjury that I have examined and am familiar with the information submitted in this document and all attachments and that this document and its attachments were prepared either by me personally or under my direction or supervision in a manner designed to ensure that qualified and knowledgeable personnel properly gathered and presented the information contained therein. I further certify, based on my personal knowledge or on my inquiry of those individuals immediately responsible for obtaining the information, that the information is true, accurate, and complete. I am aware that there are significant penalties for submitting false information under oath, including the possibility of fines and/or imprisonment for falsely certifying information.

### EFFECT OF SETTLEMENT

21. This Consent Decree represents full and final settlement between the Parties and resolves any and all liability Defendants may have to the Plaintiff for all Clean Air Act violations alleged in the Complaint in this case, in the WDNR Notice of Violation dated November 11, 2008, in the WDNR Memorandum entitled "PSD Applicability for Menasha Utilities" dated August 16, 2008, in the Sierra Club Notice of Intent dated February 4, 2009, and in EPA's Notice of Violation dated June 24, 2009, or

13

which the Plaintiff might have alleged against Defendants regarding the River Street Plant based on information in the possession of, or readily available to, the Plaintiff as of the date of signing this Consent Decree.

22. Nothing contained in this Consent Decree shall be construed as an admission of liability, a violation of the Clean Air Act, a failure to obtain a required environmental permit or other regulatory approval, or a failure to comply with state or federal laws or regulations by the Defendants pertaining to anything related to the modification or operation of the River Street Plant.

23. The Plaintiff reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated herein, and to participate in and exercise any and all legal rights in any collateral permitting or other proceeding to this Consent Decree. Without limitation, Plaintiff may participate in any permit proceedings resulting from applications submitted by Defendants as a result of this Consent Decree, and may assert and attempt to prove in any such proceeding that the limits required by paragraphs 11 and 12 of this Consent Decree are insufficiently stringent to satisfy BACT, or any other Clean Air Act requirement. Defendants do not concede that the limits or technologies listed in paragraph 11(a) represent BACT for the River Street Plant for purposes of any permit application filed pursuant to paragraph 11(b).

24. Subject to the provisions of this Consent Decree, Defendants reserve all rights to defend against any effort to enforce this Consent Decree and in any collateral permitting or other proceeding to this Consent Decree.

**TERMINATION**

25. This Consent Decree shall terminate on or before December 31, 2015, upon all of the following:

(a) Defendants have:

    i. ceased operations of the Boilers and have obtained a federally-enforceable permit that prohibits operation of the Boilers (as described in paragraph 9) unless and until the requirements in paragraphs 9 through 13 of this Consent Decree are satisfied and which cannot be modified to eliminate such prohibition; or

    ii. obtained and are in compliance with a PSD Permit that satisfies the requirements of paragraphs 9 through 13 of this Consent Decree; and

(b) Defendants have certified, under oath, that they are in compliance with the Clean Air Act for the Boilers and with each of the obligations in this Consent Decree (with the exception of obtaining the permit(s) described in paragraphs 10 through 12 of this Consent Decree if Defendants have not recommenced operation of the Boilers); and

(c) Plaintiff does not notify the Court within 30 days of receipt of notice of proposed termination that Plaintiff contends that

Defendants have failed to comply with any of the obligations of this Consent Decree.

**GENERAL PROVISIONS**

26. The Court shall retain jurisdiction to enforce the terms of this Consent Decree until its termination.

27. In the event of a dispute between the Parties concerning the interpretation or implementation of any aspect of this Consent Decree, the disputing Party shall provide the other Party with a written notice outlining the nature of the dispute and requesting informal negotiations. If the Parties cannot reach an agreed-upon resolution within sixty (60) days after receipt of the notice, any party may move the Court to resolve the dispute.

28. The Parties agree that approval of this Consent Decree may be achieved by the actual signature of the Parties' authorized representatives and/or attorneys, a copy or facsimile of said actual signature being valid as the original.

29. The recitals set forth above are an integral part of this Consent Decree and are incorporated herein by reference.

30. Except as otherwise provided herein, this Consent Decree cannot be amended, modified, clarified or explained, except by a writing executed by the Parties, which expresses, by its terms, an intention to modify this Consent Decree and that is approved by the Court.

31. Each party shall provide to the other party any document required by this Consent Decree as soon as reasonably possible.

32. <u>Notice</u>. When notice is required to be given under the terms of this Consent Decree, notice will be given by facsimile, electronic mail, and United States mail to the following representatives of the Parties:

    For Sierra Club:

    David Bender
    McGillivray Westerberg & Bender LLC
    305 S. Paterson Street
    Madison, WI 53703
    608-310-3561 (facsimile)
    bender@mwbattorneys.com

    James Gignac
    Sierra Club
    122 West Washington Avenue #830
    Madison, WI 53703
    608-257-3513 (facsimile)
    James.Gignac@sierraclub.org

    For Defendants:

    Todd Palmer
    Dewitt Ross & Stevens
    2 East Mifflin Street
    Suite 600
    Madison, WI 53703
    608-252-9368 (phone)
    608-252-9243 (facsimile)
    tep@dewittross.com

    Mayor
    City of Menasha
    140 Main Street
    Menasha, WI 54952
    920-967-3600 (phone)

    Dick Sturm
    Menasha Utilities
    321 Milwaukee Street
    P.O. Box 340
    Menasha, WI 54952
    920-967-3441 (facsimile)

33. Any party may, by written notice to the other Parties, change its designated notice recipient(s) and/or contact information by providing written notice to the Parties.

34. Notices submitted pursuant to this paragraph shall be deemed submitted upon distribution through an electronic mail message and mailing.

## COSTS AND ATTORNEY FEES

35. The deadline for filing a motion for costs of litigation (including attorneys' fees) for activities prior to entry of this Consent Decree by the Court is hereby extended until 90 days after this Consent Decree is entered by the Court. During this 90-day period, the Parties shall seek to resolve informally any claim for costs of litigation (including attorneys' fees), and, if they cannot, will submit that issue to the Court for resolution. An award of fees for activities prior to entry of this Consent Decree by the Court under this paragraph does not waive Plaintiff's ability to seek recovery for costs of litigation (including attorneys' fees) incurred to monitor and/or enforce the provisions of this Consent Decree. Attorneys' fees and costs related to monitoring and/or disputing future PSD permit applications in forums other than this Court would not be recoverable under this Consent Decree.

# FINAL JUDGMENT

36. Judgment on these terms may be entered, following a 45-day comment period provided in 42 U.S.C. § 7604(c)(3) without further proceedings.

        SIERRA CLUB

        By Its Counsel:

        s/ David C. Bender
        DAVID C. BENDER
        McGillivray Westerberg & Bender LLC
        305 S. Paterson Street
        Madison, WI 53703
        State Bar #1046102


        CITY OF MENASHA and
        MENASHA PUBLIC UTILITIES

        By Their Counsel:

        s/ Todd Palmer
        TODD PALMER
        DeWitt Ross & Stevens SC
        Two East Mifflin Street
        Suite 600
        Madison, WI 53703
        State Bar #1010197

SO ORDERED, this 15th day of February, 2011.

        s/ William C. Griesbach
        WILLIAM C. GRIESBACH
        United States District Judge

APPENDIX A

       Among the fuels authorized for use under Paragraph 11(c)(ii) include: industrial process grains; spent corn grains; plant based materials, including, but not limited to wood residue and wood products, such as trees, tree stumps, tree limbs, bark, lumber, sawdust, sander dust, chips, scraps, slabs, millings, shavings and wood pellets (including pellets bound with chlorine free materials); waste paper and paper pellets; dried bio-solids; paper mill sludge; organic sludge; non-recyclable cardboard and paper; animal litter; vegetative agricultural and silvicultural materials, such as logging residues, nut and grain hulls and chaff, bagasse, orchard prunings, corn stalks, coffee bean hulls and grounds, grasses; and waste to the extent that such waste is from a renewable resource.