# United States District Court

EASTERN DISTRICT OF WISCONSIN

SIERRA CLUB,
        Plaintiff,

**JUDGMENT IN A CIVIL CASE**

v.

Case No. 09-C-122

CITY OF MENASHA, and
MENASHA PUBLIC UTILITIES,
        Defendants.

---

☐     **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒     **Decision by Court.** This action came before the Court for consideration.

      **IT IS HEREBY ORDERED AND ADJUDGED** that all claims in this action have been settled between Sierra Club, the City of Menasha, and Menasha Public Utilities pursuant to a Consent Decree and that judgment is now entered without further proceedings pursuant to 42 U.S.C. § 7604(c)(3).

1.     For purposes of this Judgment, the following definitions shall apply:

    a.     "Best available control technology" or "BACT" shall have the meaning set forth in Wis. Admin. Code § NR 405.02(7);

    b.     "Boiler(s)" means boiler #3 and/or boiler #4 at the River Street Plant. This definition includes fuel feeding equipment for boilers #3 and #4, but does not include the auxiliary heating boiler;

    c.     "Clean Air Act" means the federal Clean Air Act, 42 U.S.C. §§ 7401-7671, and its state and federal implementing regulations;

1

d. "Continuous Emission Monitor" or "CEM" means a system for continuous data collection and reporting of emissions and which meets the specifications set forth in Wis. Admin. Code § NR 439.095(6);

e. "Defendants" means the City of Menasha, Wisconsin, and all its departments, including the Menasha Utilities and the Steam Utility, their affiliates, departments, successors and assigns, and all future owners and/or operators of the River Street Plant and their affiliates, successors and assigns;

f. "DNR" means the Wisconsin Department of Natural Resources;

g. "Force Majeure Event" is defined in Paragraph 3 herein;

h. "Plaintiff" means the Sierra Club, a non-profit corporation incorporated under the laws of California, with its principal place of business in Wisconsin located at 122 West Washington Street, Madison, Dane County, Wisconsin;

i. "PSD" or "Prevention of Significant Deterioration" means the program set forth in 42 U.S.C. §§ 7470 through 7479 and Wis. Admin. Code ch. NR 405; and

j. "River Street Plant" means the plant located at 198 River Street, Menasha, Winnebago County, Wisconsin, including but not limited to the Boilers, steam turbines, coal handling, and ash handling equipment located there.

k. "Consent Decree" means the Consent Decree signed by the Plaintiff and the city of Menasha and Menasha Public Utilities and approved by this court on February 15, 2011.

2. Injunctive Relief:

a. Defendants shall cease operation of the Boilers and ensure that no combustion occurs within and no air emissions are created from combustion of coal, petroleum coke, or tire-derived fuels in the Boilers of the River Street Plant after February 15, 2011, except for purposes of testing, decommissioning and maintenance of the Boilers, and except as provided in paragraph 2.b.

b. Defendants shall not resume operation of the Boilers unless and until Defendants have:

   i. obtained a Prevention of Significant Deterioration ("PSD") Permit for the plant that satisfies all requirements of the State Implementation Plan ("SIP") approved provisions of Wis. Admin. Code ch. NR 405, and that contains best available control technology limits for particulate matter, nitrogen

2

oxides, sulfur dioxides, carbon monoxide, and sulfuric acid mist that are consistent with paragraphs 2.c. and 2.d.; or accepted enforceable permit limits that render the River Street Plant a synthetic minor source for purposes of PSD consistent with paragraph 2.c.iii. in which case a PSD permit will not be required; and

    ii. submitted an application, or a revision to any pending application, for an operating permit pursuant to 40 C.F.R. pt 70 which identifies PSD and best available control technology limits as applicable requirements for particulate matter, nitrogen oxides, sulfur dioxides, carbon monoxide, and sulfuric acid mist.

c. If Defendants submit an application for a PSD permit pursuant to paragraph 2.b., Defendants' application shall include an analysis of BACT for the Boilers at the River Street Plant that, at a minimum, satisfies one of the following:

    i. The application proposes emission rates for particulate matter, particulate matter less than 10 microns (PM10), nitrogen oxides, sulfur dioxides, carbon monoxide, and sulfuric acid mist that are no less stringent than the maximum degree of pollution reduction achievable for the Boilers through the following technologies:

| Pollutant | BACT-level Control Technology |
|---|---|
| $SO_2$ | Flue Gas Desulferization ("FGD") |
| $NO_x$ | Selective Catalytic Reduction ("SCR") |
| PM | Baghouse equipped with membrane material, micro-fiber material, micro-fiber capped composite material or other filter material that has enhanced performance for collection of fine particulate as compared to conventional material |

The factors in NR 405.02(7)(2009) shall be considered in establishing emission rates associated with such technologies.

3

ii. or; the application proposes and Defendants obtain enforceable permit limits that:

(a) prohibit more than 90% of the combined heat input into the Boilers to be supplied by any combination of coal, petroleum coke, metallurgical coke and/or tires (i.e., tire derived fuel), averaged over any 12-month period for the first twenty-four (24) months following recommencement of operation; and

(b) prohibit more than 80% of the combined heat input into the Boilers to be supplied by any combination of coal, petroleum coke, metallurgical coke and/or tires (i.e., tire derived fuel), averaged over any 12-month period, to take effect twenty-four (24) months after recommencing operation; and

(c) represent best available control technology emission limits consistent with applicable law for particulate matter, particulate matter less than 10 microns (PM10), nitrogen oxides, sulfur dioxides, carbon monoxide, and sulfuric acid mist;

iii. or; the application proposes and Defendants accept enforceable permit limits that:

(a) restrict emissions of particulate matter, PM10, nitrogen oxides, sulfur dioxides, carbon monoxide, and sulfuric acid mist to levels that avoid having historic emissions increases trigger PSD permitting requirements, including, by way of example, limiting such emissions and/or derating the Boilers(s) to levels below the "major stationary source" set forth in Wis. Admin. Code § NR 405.02(22) (2009), thereby rendering the River Street Facility a synthetic minor source for purposes of PSD permitting; and

(b) Prohibits the use of any fuels other than natural gas, biomass, and/or the fuels listed in Appendix A. In this case the Boilers would not be required to meet BACT limitations or otherwise obtain a PSD permit pursuant to this Judgment.

d. Any PSD permit issued for the River Street Plant prior to restarting the plant shall either:

4

- i. Include BACT limits at least as stringent as the maximum degree of pollution reduction achievable through the technologies in paragraph 2.c.i.; or

- ii. Contain a limit on fuel usage consistent with paragraph 2.c.ii. and include BACT limits consistent with applicable law for particulate matter, PM10, nitrogen oxides, sulfur dioxides, carbon monoxide, and sulfuric acid mist; or

- iii. Contain enforceable limits that restrict emissions of particulate matter, PM10, nitrogen oxides, sulfur dioxides, carbon monoxide, and sulfuric acid mist as set forth in paragraph 2.c.iii., including a prohibition on use of any fuels other than those listed in paragraph 2.c.iii.(b).

e. In the application filed pursuant to paragraph 2.b. herein, Defendants shall not claim a creditable reduction in air emissions for the pollutants listed in paragraph 2.b. herein for purposes of calculating the "net emissions increase" pursuant to the June 2007 version of Wis. Admin. Code § NR 405.02(24). If the June 2007 version of Wis. Admin. Code § NR 405.02(24) is modified, vacated, or not approved by the United States Environmental Protection Agency into the Wisconsin State Implementation Plan, Defendants may not claim a creditable reduction in the application filed pursuant to paragraph 2.b. herein for purposes of calculating a "net emissions increase" for the pollutants listed in paragraph 2.b. herein under the PSD regulatory program in effect at the time of filing the application under paragraph 2.b. herein.

f. By May 16, 2011, Defendants shall apply to the Wisconsin DNR for a revision to its operating permit, or revise any pending operating permit application, to incorporate the requirements of paragraphs 2.a. through 2.e. of this Judgment into the operating permits for the River Street Plant issued pursuant to 40 C.F.R. pt. 70 and Wis. Admin. Code ch. NR 407. Defendants shall take all actions necessary to ensure that any operating permit issued by the Wisconsin DNR for the plant includes the requirements of paragraphs 2a. through 2.e. of this judgment as applicable and federally-enforceable operating permit conditions The refusal of DNR or EPA to amend the operating permits shall not constitute a violation of the Consent Decree or this Judgment, provided Defendants have otherwise complied with this paragraph, including taking all necessary actions to obtain amended operating permits. If the DNR or the EPA refuses to issue an amended operating permit, such refusal does not excuse Defendants from compliance with all other requirements of the Consent Decree or this Judgment.

3. Force Majeure:

   a. A "Force Majeure Event" shall mean an event that has been or will be caused by circumstances beyond the control of Defendants or their contractors or agents, that delays compliance with any provision of the Consent Decree or this Judgment, or otherwise causes a violation of any provision of the Consent Decree or this Judgment despite Defendants' efforts to fulfill the obligation. Efforts to fulfill the obligation include attempting to anticipate any potential Force Majeure Event and to address the effects of such event (i) as it is occurring and (ii) after it has occurred, such that the delay or violation is minimized.

   b. In the event the Defendants claim a Force Majeure Event, they shall give notice to Plaintiff within a reasonable time. In the event that the parties disagree regarding a claim of Force Majeure, the parties shall attempt to resolve that dispute pursuant to paragraph 27 of the Consent Decree. In any such dispute, Defendants shall have the burdens of proof and persuasion to demonstrate that a Force Majeure Event occurred, based on the standards set forth above.

   c. Subject to the provisions of paragraphs 3.a. and 3.b. above, if a delay or violation is caused by a Force Majeure Event, such delay or violation shall not be considered a violation of the Consent Decree or this Judgment.

4. Reporting Requirements:

   a. Defendants shall submit to Plaintiff a report on the closing down of the River Street Plant by March 18, 2011. Until termination of the Consent Decree, Defendants shall provide Plaintiff with a copy of each air pollution related report required to be submitted to the Wisconsin Department of Natural Resources and/or United State Environmental Protection Agency within fifteen (15) days of filing such report with the agency.

   b. If the Defendants violate any requirement of the Consent Decree or this Judgment, or have knowledge that a violation is imminent and unavoidable, Defendants shall notify Plaintiff of such violation and its likely duration in writing within ten (10) working days of the day that Defendants first become aware of the violation or imminent violation, with an explanation of the violation's likely cause and of the remedial steps taken and/or to be take, to prevent or minimize such violation.

   c. Each notification, report and certification required of Defendants in the Consent Decree and this Judgment shall be signed by one or more officials of the Defendants, under oath, and shall contain the following statement:

6

> I certify under penalty of perjury that I have examined and am familiar with the information submitted in this document and all attachments and that this document and its attachments were prepared either by me personally or under my direction or supervision in a manner designed to ensure that qualified and knowledgeable personnel properly gathered and presented the information contained therein. I further certify, based on my personal knowledge or on my inquiry of those individuals immediately responsible for obtaining the information, that the information is true, accurate, and complete. I am aware that there are significant penalties for submitting false information under oath, including the possibility of fines and/or imprisonment for falsely certifying information.

5. The Consent Decree shall terminate on or before December 31, 2015, upon all of the following:

   a. Defendants have:

      i. ceased operations of the Boilers and have obtained a federally-enforceable permit that prohibits operation of the Boilers (as described in paragraph 2.a.) unless and until the requirements in paragraphs 2a. through e. of this Judgment are satisfied and which cannot be modified to eliminate such prohibition; or

      ii. obtained and are in compliance with a PSD Permit that satisfies the requirements of paragraphs 2a. through e. of this Judgment; and

   b. Defendants have certified, under oath, that they are in compliance with the Clean Air Act for the Boilers and with each of the obligations in the Consent Decree (with the exception of obtaining the permit(s) described in paragraphs 2.b. through 2.d. of this Judgment if Defendants have not recommenced operation of the Boilers); and

   c. Plaintiff does not notify the Court within 30 days of receipt of notice of proposed termination that Plaintiff contends that Defendants have failed to comply with any of the obligations of the Consent Decree.

6. This action is dismissed without prejudice. The court retains jurisdiction to enforce the terms of the Consent Decree until its termination.

                            Approved: s/ William C. Griesbach
                                               WILLIAM C. GRIESBACH
                                               United States District Judge

Dated: April 18, 2011.

                                               JON W. SANFILIPPO
                                               Clerk of Court

                                               s/ Terri Lynn Ficek
                                               (By) Deputy Clerk

APPENDIX A

Among the fuels authorized for use under Paragraph 11(c)(ii) include: industrial process grains; spent corn grains; plant based materials, including, but not limited to wood residue and wood products, such as trees, tree stumps, tree limbs, bark, lumber, sawdust, sander dust, chips, scraps, slabs, millings, shavings and wood pellets (including pellets bound with chlorine free materials); waste paper and paper pellets; dried bio-solids; paper mill sludge; organic sludge; non-recyclable cardboard and paper; animal litter; vegetative agricultural and silvicultural materials, such as logging residues, nut and grain hulls and chaff, bagasse, orchard prunings, corn stalks, coffee bean hulls and grounds, grasses; and waste to the extent that such waste is from a renewable resource.